JONATHAN PRESCOTT *vs.* AARON D. WILLIAMS, Administrator.

The owner of a water mill has an easement in the land below, for the free passage of the water from the mill, in the natural channel of the stream, accompanied with a right to enter upon the land for the purpose of clearing out the stream and removing obstructions to the free flow of the water.

Where land, which is conveyed by deed, is described as land " through which the water from a mill passes," and the grantor inserts a covenant in the deed, that the granted premises are free from all incumbrances, the existence of a right in the mill owner to cleanse the natural channel of the stream and remove obstructions to the free flow of the water from the mill is not an incumbrance, within the meaning of such covenant.

IN an action of covenant broken, the plaintiff alleged in his declaration that the defendant's intestate, David Dudley, by a deed, dated April 20th 1835, conveyed to the plaintiff a parcel of land in Roxbury, and therein covenanted that the premises, so conveyed, were free from all incumbrances, and that he would warrant and defend the same against the lawful claims and demands of all persons ; " but that there was, long before and at the time, and

ever since the making of said deed and covenants, the right in the owners and occupants of a certain ancient mill, near and above said premises, to have the water pass off from the wheels of the same through said premises, in an artificial raceway, and different from and other than the natural stream ; the said right being appurtenant to said mill ; and also in said owners and occupants of said mill the right to enter on said premises, conveyed as aforesaid to the plaintiff, at their free will and pleasure, and to dig up and remove all materials obstructing the full flowing of the water from said mill, and to dig up the soil and make and repair convenient ditch or ditches, or sluiceways, to carry off said water through or over said premises ; and by virtue of said right, the owner and occupant of said mill hath, since the execution of said deed and covenants, entered upon said premises and dug up stones and gravel from said raceway, against the will of the plaintiff, and the same left on said premises, to the great injury thereof ; which said right and incumbrance is in no way extinguished, but in full force, and has been settled in a court of law, of competent jurisdiction, rightfully to pertain to said mill and to be lawfully exercised by the owners and occupants thereof ; and the plaintiff hath been put to great costs and charges, in settling said right in a court of law."

At the trial before *Dewey*, J. the plaintiff produced the deed declared on, which, after describing the land by metes and bounds, had the following words : " Supposed to contain 135,000 square feet, be the same more or less, through which land the water passes from the grist mill, and the waste water from the mill pond, in separate channels." There was a covenant in the deed, that the granted premises were free from all incumbrances.

The plaintiff also introduced evidence to prove the existence of the stream mentioned in his declaration, and that the owner of said mill had a right to enter on the land aforesaid and cleanse the bed of said stream, whenever it was necessary to do so ; that this right was adjudged to be in the mill owner, by a decision of this court, in a suit brought by the plaintiff against Richard White (21 Pick. 341) for an alleged trespass on the premises

in question, in entering thereon, digging up and subverting the soil, and throwing earth on the plaintiff's garden; that the plaintiff had personally attended to the conducting of said suit, and had expended money therein; which money and the value of his personal attention to said suit, he claimed as part of the damages sustained by him by reason of the said alleged breach of covenant.

The judge, for the purpose of the trial, and to reserve the questions raised by the defendant, instructed the jury that a right, in the owner of said mill, to enter and cleanse the stream, would be an incumbrance on the premises conveyed by said deed, and a breach of the covenant therein contained; and he directed the jury (if they should find for the plaintiff) to specify in their verdict, 1st, the damage they should assess for the existence of said easement; 2d, what knowledge or notice, if any, said Dudley had of the pendency of the plaintiff's suit above mentioned against White; 3d, how much the plaintiff had expended in said suit for counsel fees and witnesses; 4th, how much he expended in costs paid to said White; 5th, whether said stream was an artificial or a natural one; and 6th, whether the owners of said mill had, by adverse use, acquired the right to enter and cleanse it out.

The jury found that the defendant's intestate had broken his covenant, and assessed $ 5 damages for the alleged easement in the premises conveyed : They also found that said Dudley received information of the suit pending between White and the plaintiff, but did not find that Dudley had notice of the pendency of the same by any direct notice from the plaintiff : They also found the amount paid by the plaintiff for counsel fees, and costs of witnesses, in prosecuting said suit, and the taxable costs paid by him to White, and the sum to which he was entitled for his own services and personal expenses in attending to said suit : They also found that said watercourse was a natural one, and that the right to enter upon the premises conveyed to the plaintiff, to make the necessary improvements of the same, for its use for said mill, had been exercised adversely by said White and those under whom he claimed, as early as the year 1807,

and from that time to the time of the trial, as occasion therefor required.

"If, from the foregoing statements and the facts found by the jury, the whole court shall be of opinion that the right of said mill owners to enter on the conveyed premises is not an incumbrance, or if, being an incumbrance on the said premises, it is not covenanted against by said Dudley in said deed, then the verdict is to be set aside and judgment rendered for the defendant ; otherwise, judgment to be rendered on the verdict for the damages assessed for the existence of the easement, and for such other items of damage enumerated in the verdict, as the court shall decide that the plaintiff is entitled to recover in their action."

*E. D. Sohier*, for the defendant.

*B. Rand & A. Cushing*, for the plaintiff.

Dewey, J. The first question is, whether, upon the facts found in the case, the plaintiff has established the alleged breach of covenant in the deed of the defendant's intestate. The institution of the plaintiff's suit against Richard White, and the proceedings therein, and final result thereof, do not of themselves establish such breach of covenant. It is true that the plaintiff failed to maintain his suit, and that judgment was rendered for the defendant White ; but the present defendant is not bound by the result of that case, inasmuch as his intestate was not a party to it, and the plaintiff did not give him notice of the pendency thereof, and did not request his aid in sustaining his title against White. The judgment in that case, therefore, can have no other effect than what may result from the decision of any general legal principles involved in it, and which may be applicable to the case at bar.

But there is obviously a material difference in the facts, as stated in that case, and those found by the jury in the present case. In the case of *Prescott* v. *White*, 21 Pick. 341, the easement in controversy was assumed to be an artificial canal or raceway, the right to which White established to be in himself, as the owner of the mill above ; and he justified an entry on the land of Prescott, to cleanse said canal. The great question there

was, as to the effect of a grant of an easement of that character, as respects the right of the grantee, and those claiming under him, to enter upon the land through which such raceway passed, to make necessary repairs and remove obstructions in the same ; and upon much consideration it was held that the owner of the mill, having such easement, had the right to enter upon the land through which the raceway passed, and clear out the obstructions in the same, in the usual and ordinary mode in which such raceways or artificial canals are cleansed, doing no unnecessary damage ; and it was held that White was justified in his entry, and that Prescott held his land subject to this right of entry as incident to the enjoyment of this easement, which had been granted to the owner of the mill above.    Upon such a state of facts, there would be an existing incumbrance upon the premises conveyed to the plaintiff by Dudley ; the right to have and enjoy this supposed artificial watercourse being held to have attached to it the secondary easement of entering upon the land through which it passed, to cleanse the same.

But upon the trial of the present action, (and it is solely upon the facts found in this case that Dudley's estate can be charged upon his covenant,) the jury have found that the stream of water passing through Prescott's land was a natural watercourse, and not an artificial raceway or canal, as had been supposed and assumed in the trial in the former case.    This materially changes the features of the case, and presents the inquiry, whether the existence of an easement, in the land conveyed, of a mill owner above, in a natural stream passing through such land, accompanied by the further fact that such mill owner above had for more than thirty years, as occasion and necessity required, entered upon the land conveyed, to remove obstructions in, and to cleanse out the stream, shows such an incumbrance upon the premises conveyed, as to subject the grantor of such premises, who conveys them with the usual covenants of warranty and against incumbrances, to an action for breach of his covenants.

The right of the owner of a mill privilege to have a natural stream of water pass off freely over the land of an owner below would not of itself create any liability for damage upon any such

covenants attached to the conveyance of the land below. The question then is, whether the further fact found by the jury, that the owner of the mill above had, for thirty years past, as occasion required, entered upon the land below, cleansed out this stream and removed the obstructions therefrom, shows the existence of any incumbrance on the premises conveyed, that will sustain the present action. This depends upon the view to be taken of another question, viz. does the right to have a natural stream of water flow freely over the land of the proprietor below, attach to it, as an incident, the right to enter on the land below to cleanse out the stream and to remove obstructions ? If it do so, then there was no artificial easement or right of servitude as to the lands below, created by compact or acquired by prescription, or indeed any servitude beyond what ordinarily accompanies a natural stream ; and of course there was no breach of the covenants contained in the deed to the plaintiff.

It is somewhat remarkable that there should be found so little direct authority bearing upon this question. Some general principles are, however, well settled, from which we may derive aid in settling this point. Now we find it stated in books of authority, that " the express or implied grant of an easement is accompanied by certain secondary easements necessary for the enjoyment of the principal one." Gale & Whatley on Easements, (Amer. ed.) 231. So also, " in the civil law, the right to a servitude drew with it a right to such secondary servitudes as were essential for its enjoyment." *Ib.* Again, it is said, that " by the civil law, the owner of the dominant tenement had a right to do whatever was requisite to secure to himself the fullest enjoyment of his servitude." 232. " But in entering upon the neighboring soil for the purpose of doing these necessary works, the owner of the dominant tenement was bound not only to exercise ordinary care and skill, but also to repair, as far as he could, whatever damage his labors might have caused to the servient tenement." *Ib.* p. 235. The decision of this court, in the case of the present plaintiff against White, already referred to, (21 Pick. 341,) seems to have recognized and adopted fully the principle, that where the use of a thing is granted, every

thing is granted essential to such use. Such a right carries with it the implied authority to do all that is necessary to secure the enjoyment of such easement.

There are other well settled legal principles, that have a bearing upon this question. The duty of making repairs, and the labor necessary for keeping the watercourse in a state fit for use, rests wholly upon him who claims an easement on his neighbor's land ; and, as a general rule, easements impose no obligation upon those, whose lands are thus placed in servitude, to do any thing. Gale & Whatley on Easements, 215. *Taylor* v. *Whitehead*, 2 Doug. 745. The owner of the land below, through which the stream passes, being thus free from all *obligation* to cleanse the stream, or remove any obstructions that may arise without fault on his part, and which may impede the free passage of the water ; if the right to cleanse such watercourse, or remove such obstructions, rests exclusively with him, the consequence will be, that the same may never be done ; and whether done or not, will depend upon the will or caprice of the owner of the land below, who may have no interest in the matter, rather than upon the wishes of the owner of the mill above, whose interests may be deeply affected by it.

We are satisfied that in the present case the owner of the mill privilege above, having this natural easement in the land below, would, independently of any right acquired by compact or by prescription, have a right to enter upon the land below, and in a reasonable and proper manner do all acts necessary to secure the enjoyment of his easement. This right to enter upon the land of another, to cleanse a natural stream, or remove any casual obstructions therein, is one doubtless to be held to the strictest and narrowest limits compatible with the enjoyment of the principal easement. It is to be considered as a privilege arising from the necessity of the case, and, like a way of necessity, to be enjoyed only when the party has no other reasonable and suitable mode of effecting this object. It is to be done in such a manner as shall cause no unnecessary damage to the owner of the land below. The incumbrance, occasioned by the easement in the present case, does not appear, by the evidence re-

lied upon to establish the nature and extent of it, to be other and different from the secondary easement embraced within the principles we have stated.  Such being the case, it constituted no such incumbrance as will authorize an action by the plaintiff for the breach of covenant in the deed of Dudley.

This result renders it unnecessary to consider and settle the various questions raised as to the measure of damages.

*Judgment for the defendant.*